# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE CITRI-LITE COMPANY, a California corporation,<br><br>  Plaintiff,<br><br>  v.<br><br>COTT BEVERAGES, I NC., d/b/a COTT BEVERAGES U.S.A., a Florida corporation, and DOES 1 through 25,<br><br>  Defendants. | 1:07-cv-1075 OWW SKO<br><br>SCHEDULING CONFERENCE ORDER<br><br>Discovery Cut-Off: 11/22/10<br><br>Non-Dispositive Motion Filing Deadline: 12/6/10<br><br>Non-Dispositive Motion Hearing Date:  1/7/11 9:00 Ctrm. 8<br><br>Dispositive Motion Filing Deadline: 12/17/10<br><br>Dispositive Motion Hearing Date:  1/24/11 10:00 Ctrm. 3<br><br>Settlement Conference Date: 11/17/10 11:00 Ctrm. 8<br><br>Pre-Trial Conference Date: 2/28/11 11:00 Ctrm. 3<br><br>Trial Date: 4/12/11 9:00 Ctrm. 3 (CT-7 days) |

I.   Date of Scheduling Conference.

   August 26, 2010.

II.  Appearances Of Counsel.

   Klein, DeNatale, Goldner, Cooper, Rosenlieb & Kimball, LLP

1

by David J. Cooper, Esq., appeared on behalf of Plaintiff.

Scheper Kim & Harris LLP by David C. Scheper and Gregory A. Ellis, Esq., appeared on behalf of Defendant.

III. Summary of Pleadings.

1. Relief Sought: Monetary damages in an amount according to proof and to be determined according to proof. The Plaintiff has already provided Defendant with a range of damages, as well as the calculation and methodology of the same as part of its expert witness disclosures, and will be providing a supplemental report as to damages.

IV. Orders Re Amendments To Pleadings.

1. The parties do not anticipate amending the pleadings at this time.

V. Factual Summary.

A. Admitted Facts Which Are Deemed Proven Without Further Proceedings.

1. Cott is a Georgia corporation with its principal place of business in Tampa, Florida.

2. Cott produces and distributes non-alcoholic beverages, including carbonated soft drinks, sparkling and flavored mineral waters, energy drinks, juices, juice drinks, ready-to-drink teas, and other non-carbonated beverages.

3. Citri-Lite Corporation, Inc. ("Citri-Lite") is a California corporation with its principal place of business in Grass Valley, California.

4. Citri-Lite was incorporated in 1996 to produce and market "Slim-Lite," a non-carbonated, zero calorie, fruit flavored diet drink designed to help support weight loss.

5. Between 1996 and 2002, Citri-Lite operated at a loss.

6. On December 28, 2003, Citri-Lite and Cott entered into a licensing agreement (the "Agreement" or "Agmt."), which is governed by California law.

7. From October 2003 to November 2007, Jason Nichol was Cott's Vice President for customer and business development and oversaw Cott's business with Wal-Mart and Sam's Club.

8. Gil Woods was Cott's Senior Manager for Sales and Finance responsible for Wal-Mart and Sam's Club during the period in which the Agreement was in effect.

9. Rob Scheiderer was Cott's Director of Sales from May 2004 through January 2005.  He was Director of Marketing and Category Management from January 2005 to March 2006.

10. Charles Calise became a Marketing Manager at Cott in December 2003.  He was responsible for control or branded beverages, including Slim-Lite.

11. John Scandrett was Cott's Director of Marketing during the term of the Agreement and Charles Calise reported directly to him.

12. Conall Dunne was Cott's Vice President of finance in 2005.

13. Doreen Gormley was Cott's Vice President of Marketing USA in 2005.

14. During the time Cott marketed Slim-Lite, it worked with two Sam's Club buyers: Jim Dragovich and Becky Fields.

15. Dragovich and Fields had discretion to modify the distribution of beverages under their respective categories.

16. Both buyers also had discretion to cancel beverages in

3

their categories.

17. At the outset of the Agreement, Slim-Lite was being sold at approximately 248 Sam's Clubs.

18. In 2004, the first year of the Agreement, sales volume of Slim-Lite increased over its sales in 2003, before the Agreement.

19. In 2003, Citri-Lite spent $705,566.26 on demos.

20. Sam's Club used its own employees to run in-store demos, and charged the supplier approximately $150 per demo in each store.

21. Sam's Club charged the vendor the full retail price for the product actually used in the demo, thus requiring the vendor to buy back the product that would be sampled.

22. Cott conducted demos at Sam's throughout 2004 and from January, 2005 through April, 2005.

23. Cott expended over $800,000 for Slim-Lite demos at Sam's Club in 2004.

24. On March 24, 2005, Cott notified Sam's Club it was cancelling all remaining Slim-Lite demos.

25. Sam's required a 30-60 day notice of cancellation, and the last demos were conducted on or about the end of April, 2005.

26. By September, 2004, Cott employees developed a plan to change the Slim-Lite packaging configuration to a 16.9 oz. bottle size, 24 bottles to a pack, and to introduce the packing changes by January or February, 2005. This packaging configuration was not implemented at Sam's Club during the term of the Agreement.

27. It generally took Cott 10-16 weeks to effect a change in bottle size, although it could be done quicker if it was at

4

1  the request of Wal-Mart or Sam's Club.

2  28.  In early 2004, when Cott began distributing Slim-Lite,
3  it was sold in approximately 800 Food Lion markets.

4  29.  In March, 2005, due to poor performance and space,
5  Slim-Lite was removed from 489 smaller Food Lion stores.

6  30.  Peak distribution of Slim-Lite at Sam's Club occurred
7  in December 2004, when the beverage was available in 528 stores.

8  31.  Between December 2004 and March 2005, distribution at
9  Sam's Club was cut to 463 stores.

10  32.  At approximately the beginning of April 2005, Sam's
11  Club cut the distribution of Slim-Lite from 463 stores to 89
12  stores.

13  33.  On March 30, 2005, Cott learned that Slim-Lite would be
14  moved to Becky Fields, a new buyer at Sam's Club.

15  34.  In October 2005, Cott notified Citri-Lite that it was
16  exercising its right to terminate the Agreement effective
17  December 31, 2005.

18  35.  Cott first told Citri-Lite it was terminating the
19  Agreement in a phone conversation on October 21, 2005, followed
20  by a written notice on October 26, 2005.

21  36.  In November 2005, Cott arranged for a meeting between
22  Mr. Horrigan and Ms. Fields to discuss the proposed shrink wrap
23  designs for a 24-pack of Slim-Lite.

24  37.  Once the Agreement ended, Cott provided Citri-Lite with
25  the design files it developed for the proposed 24-pack, 16.9
26  ounce package.

27  38.  Cott continued to produce Slim-Lite into 2006 from its
28  remaining inventory of raw materials.

39. Cott continued to make production runs of Slim-Lite from its remaining inventory of raws under an arrangement whereby Cott charged Citri-Lite the cost of Cott's remaining inventory of Slim-Lite raw materials against outstanding royalties owed to Citri-Lite under the Agreement.

40. The parties entered into a final reconciliation of these services, resulting in a net payment to Cott of Approximately $30,000.

41. Cott exercised its termination right under the Agreement.

B. Contested Facts.

1. All remaining facts are disputed.

VI. Legal Issues.

A. Uncontested.

1. Jurisdiction exists under 28 U.S.C. § 1332.

2. Venue is proper under 28 U.S.C. § 1391.

3. In this diversity action, the parties agree that the substantive law of the State of California provides the rule of decision.

4. The Agreement obligated Cott, among other duties, to "use commercially reasonable efforts to promote and sell [Slim-Lite] so as to maintain and enhance the value of the goodwill residing in the Intellectual Property and to produce the maximum amount of Royalty" due to Citri-Lite under the Agreement.

5. The Agreement also contained an implied-in-law covenant of good faith and fair dealing which required, *inter alia*, that both parties to the Agreement act in good faith and with fairness toward the other concerning all matters relating to

6

1  the subject of the Agreement; that neither party take any action
2  to destroy or injure the right of the other party from receiving
3  the benefits of the Agreement; that each party give the other's
4  interests as much consideration as it gave to its own interests;
5  that both parties refrain from doing anything which would render
6  performance of the Agreement impossible; and that both parties do
7  everything that the Agreement presupposed that it will do to
8  accomplish the Agreement's purpose.
9       B.   Contested.
10           1.   <u>Plaintiff's Statement</u>.
11                a.   Citri-Lite performed all terms, covenants,
12  and conditions on its part to be performed under the Agreement.
13                b.   Beginning in approximately October 2004 and
14  continuing through October 2005, Cott unilaterally breached
15  Section 2.4 of the Agreement by failing, inter alia, "to use
16  commercially reasonable efforts to promote and sell [Slim-Lite]
17  so as to maintain and enhance the value of the goodwill residing
18  in the Intellectual Property and to produce the maximum amount of
19  Royalty" for Citri-Lite.  Cott is liable for actual and
20  consequential damages caused by its breaches of Section 2.4 of
21  the Agreement in an amount to be proven at trial.
22                c.   During the term of the Agreement, Cott acted
23  unfairly and in bad faith, failed to give Citri-Lite's interests
24  as much consideration as its own, destroyed Citri-Lite's right to
25  receive the benefits of the Agreement, and failed to do
26  everything the Agreement presupposed to accomplish its purpose.
27                d.   Cott is liable for actual and consequential
28  damages caused by its breaches of the implied covenant of good

faith and fair dealing in an amount to be proven at trial. Specifically, Cott management decided in a meeting of the Board of Directors in October 2004, to focus on private label beverages and to wind down licensed brands, such as Slim-Lite.  However, having made this decision, Cott never informed the plaintiff that it would discontinue supporting the Slim-Lite brand but rather withheld that information from the plaintiff until it gave plaintiff notice of termination of the Agreement approximately one year later, after irreparable harm had already been done to the brand.

        2.    <u>Defendant's Statement</u>.

           a.    Cott performed all terms, covenants, and conditions on its part to be performed under the Agreement, and thus is not liable for breach of contract.

           b.    Cott did not violate the implied covenant of good faith and fair dealing because it acted to do everything the Agreement presupposed to accomplish its purpose, by *inter alia*: seeking increased distribution of the Slim-Lite beverage at multiple retailers; obtaining greatly increased distribution of Slim-Lite at Wal-Mart Superstores nationwide in early 2005; by fully engaging Citri-Lite in its efforts to regain distribution of Slim-Lite at Sam's Club stores in mid-to-late 2005; and by continuing to produce Slim-Lite even after the Agreement's expiration.

           c.    Any injury to Citri-Lite was not caused by Cott, but by independent distribution decisions made by third party retailers, primarily Sam's Club, which were unrelated to any conduct by Cott.

    d. As noted in the Court's summary judgment ruling, Citri-Lite's recovery for lost profits, if any, is limited to the date of the Agreement's expiration. Citri-Lite has not and cannot establish any damages for loss of goodwill.

VII. Consent to Magistrate Judge Jurisdiction.

 1. The parties have not consented to transfer the case to the Magistrate Judge for all purposes, including trial.

VIII. Corporate Identification Statement.

 1. Any nongovernmental corporate party to any action in this court shall file a statement identifying all its parent corporations and listing any entity that owns 10% or more of the party's equity securities. A party shall file the statement with its initial pleading filed in this court and shall supplement the statement within a reasonable time of any change in the information.

IX. Discovery Plan and Cut-Off Date.

 1. With the exception of the deposition of George Horrigan, to be completed in September 2010, all percipient witness depositions have been completed. Both parties have completed written discovery and do not anticipate any discovery motions. Expert witness depositions of the two expert witnesses designated by each party will be conducted in October 2010.

 2. The parties are ordered to complete all non-expert discovery on or before September 30, 2010.

 3. The parties are directed to disclose any rebuttal or supplemental expert disclosures on or before October 22, 2010. The parties will comply with the provisions of Federal Rule of Civil Procedure 26(a)(2) regarding their expert designations.

Local Rule 16-240(a) notwithstanding, the written designation of experts shall be made pursuant to F. R. Civ. P. Rule 26(a)(2), (A) and (B) and shall include all information required thereunder.  Failure to designate experts in compliance with this order may result in the Court excluding the testimony or other evidence offered through such experts that are not disclosed pursuant to this order.

    4.    The parties are ordered to complete all discovery, including experts, on or before November 22, 2010.

    5.    The provisions of F. R. Civ. P. 26(b)(4) shall apply to all discovery relating to experts and their opinions.  Experts may be fully prepared to be examined on all subjects and opinions included in the designation.  Failure to comply will result in the imposition of sanctions.

X.    Pre-Trial Motion Schedule.

    1.    All Non-Dispositive Pre-Trial Motions, including any discovery motions, will be filed on or before December 6, 2010, and heard on January 7, 2011, at 9:00 a.m. before Magistrate Judge Sheila K. Oberto in Courtroom 8.

    2.    In scheduling such motions, the Magistrate Judge may grant applications for an order shortening time pursuant to Local Rule 142(d).  However, if counsel does not obtain an order shortening time, the notice of motion must comply with Local Rule 251.

    3.    All Dispositive Pre-Trial Motions are to be filed no later than December 17, 2010, and will be heard on January 24, 2011, at 10:00 a.m. before the Honorable Oliver W. Wanger, United States District Judge, in Courtroom 3, 7th Floor.

In scheduling such motions, counsel shall comply with Local Rule 230.

XI.  Pre-Trial Conference Date.

    1.   February 28, 2011, at 11:00 a.m. in Courtroom 3, 7th Floor, before the Honorable Oliver W. Wanger, United States District Judge.

    2.   The parties are ordered to file a Joint Pre-Trial Statement pursuant to Local Rule 281(a)(2).

    3.   Counsel's attention is directed to Rules 281 and 282 of the Local Rules of Practice for the Eastern District of California, as to the obligations of counsel in preparing for the pre-trial conference.  The Court will insist upon strict compliance with those rules.

XII. Motions - Hard Copy.

    1.   The parties shall submit one (1) courtesy paper copy to the Court of any motions filed.  Exhibits shall be marked with <u>protruding numbered or lettered tabs</u> so that the Court can easily identify such exhibits.

XIII.  Trial Date.

    1.   April 12, 2011, at the hour of 9:00 a.m. in Courtroom 3, 7th Floor, before the Honorable Oliver W. Wanger, United States District Judge.

    2.   This is a non-jury trial.

    3.   Counsels' Estimate Of Trial Time:

        a.   7 days.

    4.   Counsels' attention is directed to Local Rules of Practice for the Eastern District of California, Rule 285.

///

**XIV. Settlement Conference.**

1. A Settlement Conference is scheduled for November 17, 2010, at 11:00 a.m. in Courtroom 8 before the Honorable Sheila K. Oberto, United States Magistrate Judge.

2. Unless otherwise permitted in advance by the Court, the attorneys who will try the case shall appear at the Settlement Conference with the parties and the person or persons having full authority to negotiate and settle the case on any terms at the conference.

3. Permission for a party [not attorney] to attend by telephone may be granted upon request, by letter, with a copy to the other parties, if the party [not attorney] lives and works outside the Eastern District of California, and attendance in person would constitute a hardship. If telephone attendance is allowed, the party must be immediately available throughout the conference until excused regardless of time zone differences. Any other special arrangements desired in cases where settlement authority rests with a governing body, shall also be proposed in advance by letter copied to all other parties.

4. Confidential Settlement Conference Statement. At least five (5) days prior to the Settlement Conference the parties shall submit, directly to the Magistrate Judge's chambers, a confidential settlement conference statement. The statement should not be filed with the Clerk of the Court nor served on any other party. Each statement shall be clearly marked "confidential" with the date and time of the Settlement Conference indicated prominently thereon. Counsel are urged to request the return of their statements if settlement is not

achieved and if such a request is not made the Court will dispose of the statement.

    5.   The Confidential Settlement Conference Statement shall include the following:

        a.   A brief statement of the facts of the case.

        b.   A brief statement of the claims and defenses, i.e., statutory or other grounds upon which the claims are founded; a forthright evaluation of the parties' likelihood of prevailing on the claims and defenses; and a description of the major issues in dispute.

        c.   A summary of the proceedings to date.

        d.   An estimate of the cost and time to be expended for further discovery, pre-trial and trial.

        e.   The relief sought.

        f.   The parties' position on settlement, including present demands and offers and a history of past settlement discussions, offers and demands.

XV.   Request For Bifurcation, Appointment Of Special Master, Or Other Techniques To Shorten Trial.

    1.   None.

XVI.  Related Matters Pending.

    1.   There are no related matters.

XVII.   Compliance With Federal Procedure.

    1.   The Court requires compliance with the Federal Rules of Civil Procedure and the Local Rules of Practice for the Eastern District of California.  To aid the court in the efficient administration of this case, all counsel are directed

to familiarize themselves with the Federal Rules of Civil Procedure and the Local Rules of Practice of the Eastern District of California, and keep abreast of any amendments thereto.

XVIII.   Effect Of This Order.

    1.   The foregoing order represents the best estimate of the court and counsel as to the agenda most suitable to bring this case to resolution.  The trial date reserved is specifically reserved for this case.  If the parties determine at any time that the schedule outlined in this order cannot be met, counsel are ordered to notify the court immediately of that fact so that adjustments may be made, either by stipulation or by subsequent scheduling conference.

    2.   Stipulations extending the deadlines contained herein will not be considered unless they are accompanied by affidavits or declarations, and where appropriate attached exhibits, which establish good cause for granting the relief requested.

    3.   Failure to comply with this order may result in the imposition of sanctions.

IT IS SO ORDERED.

Dated:   **August 27, 2010**                    **/s/ Oliver W. Wanger**
                                                 UNITED STATES DISTRICT JUDGE